1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ALISON WESTOVER,

                        Plaintiff,

        v.

STATE OF WASHINGTON; STATE OF

WASHINGTON DEPARTMENT OF

NATURAL RESOURCES; HILARY

FRANZ; CARLO DAVIS; SARAH FORD;

DARWIN FORSYTH,

                        Defendant.

Case No. 3:24-cv-05872-TMC

ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS

## I.    INTRODUCTION

This case arises out of the termination of Plaintiff Alison Westover from her employment

at the Washington Department of Natural Resources ("DNR"). Defendants are the State of

Washington and DNR as well as individual Defendants Hilary Franz, Carlo Davis, Sarah Ford,

and Darwin Forsyth. In August 2021, then-Commissioner of Public Lands Hilary Franz issued a

COVID-19 vaccine mandate for DNR employees. This mandate was consistent with a statewide

proclamation from then-Governor Jay Inslee that required state employees be fully vaccinated

against COVID-19 by October 18, 2021, or seek a medical or religious accommodation. In September 2021, Westover began posting YouTube videos of interviews with medical professionals who opposed the COVID-19 vaccine and employer vaccine mandates. Westover asserts that she was wrongfully terminated from her position as Communications Specialist for exercising her First Amendment right to speak about the COVID-19 vaccine.

Westover brings eight claims under Section 1983 alleging that she was fired in violation of the First Amendment, Fourteenth Amendment, and unconstitutional conditions doctrine. Defendants moved for judgment on the pleadings, contending that Westover's First Amendment, unconstitutional conditions, and arbitrary and capricious claims should be dismissed for failure to file within the three-year statute of limitations. Defendants also argue that Westover's Fourteenth Amendment due process claim fails as a matter of law. Finally, Defendants assert that claims against the State of Washington and DNR must be dismissed because they are barred by Eleventh Amendment sovereign immunity.

For the reasons explained below, the Court concludes that Westover's First Amendment, unconstitutional conditions, and arbitrary and capricious claims are barred by the statute of limitations. Additionally, the Fourteenth Amendment due process claim must be dismissed because the factual allegations in the complaint do not entitle Westover to relief. Claims against the State of Washington and DNR must be dismissed because state entities are not "persons" for purposes of Section 1983 and cannot be sued for constitutional violations unless they affirmatively waive sovereign immunity, which they have not.

Thus, the motion for judgment on the pleadings (Dkt. 18) is GRANTED. Because amendment would be futile, the complaint is DISMISSED with prejudice. The Clerk is directed to enter judgment in favor of Defendants and close the case.

## II.    BACKGROUND

Westover was hired by the Washington Department of Natural Resources ("DNR") as a Communications Specialist in September 2019. Dkt. 1 ¶¶ 2, 12; Dkt. 1-2 ¶ 4.[1] Her duties included coordinating with the Communications & Outreach Division "to develop, design, write, and implement communications plans, and produce materials such as news releases, presentations, brochures, social media content, blogs[,] and website content." Dkt. 1 ¶ 13; Dkt. 1-2 ¶ 5. Before her employment at DNR, Westover worked for Fox News and King 5, Seattle's NBC affiliate station. Dkt. 1 ¶¶ 14–15; Dkt. 1-2 ¶ 6. While working at King 5, Westover created an independent YouTube channel. Dkt. 1 ¶ 17; Dkt. 1-2 ¶ 9.

Westover alleges that when she was hired by DNR, the agency "was aware of the fact that she produced an independent YouTube channel," and "Defendant Davis . . . encouraged Ms. Westover, without restriction, to continue her independent journalism[.]" Dkt. 1 ¶¶ 18–19; Dkt. 1-2 ¶ 10. Westover asserts that she "was given the impression that no topic was 'off limits'" based on a conversation with Defendant Davis during her interview for the position. Dkt. 1 ¶¶ 19–22; Dkt. 1-2 ¶¶ 11–14. She alleges "Defendant Davis put nothing in writing, nor was Ms. Westover party to a contract limiting her freedom to speak on her channel." Dkt. 1 ¶ 23. Thus, Westover "produced and posted to her YouTube channel over 200 videos between September 16, 2019 and September 30, 2021" and the "content was filmed on her personal time and using her personal equipment." *Id.* ¶¶ 24–25; Dkt. 1-2 ¶¶ 15, 29. From September 2019

---

[1] Generally, the Court "may not consider any material beyond the pleadings" but "[c]ertain written instruments attached to pleadings may be considered part of the pleading[.]" *Friedman v. AARP, Inc.*, 855 F.3d 1047, 1051 (9th Cir. 2017); *see Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000) ("In determining whether a plaintiff can prove facts in support of his or her claim that would entitle him or her to relief, we may consider facts contained in documents attached to the complaint.") (citation omitted). Here, the Court considers the declaration and exhibits attached to Westover's complaint (Dkt. 1-2) as part of the pleadings.

through September 2021, Westover worked at DNR without any workplace complaints or

disciplinary actions. Dkt. 1 ¶ 27; Dkt. 1-2 ¶ 16.

Consistent with Governor Inslee's Proclamation imposing a COVID-19 vaccine mandate

on state agency workers, on August 21, 2021, Defendant Franz as Commissioner of the Public

Lands issued a directive requiring all DNR employees be fully vaccinated against COVID-19 by

October 18, 2021 or request a medical or religious accommodation.[2] *See* Dkt. 19 at 4. On

September 25, 2021, Westover posted to her YouTube channel an interview with Dr. Mollie

James, where Dr. James discussed her choice to leave her position as an ICU doctor because of

her employer's COVID-19 vaccine mandate. Dkt. 1 ¶¶ 30–31; Dkt. 1-2 ¶¶ 17–18, 21. The next

day, Westover posted another interview with Dr. Aaron Kheriaty, which discussed

"Dr. Kheriaty's lawsuit against the University of California over the University's COVID-19

vaccine mandate, as well as Dr. Kheriaty's opinions about COVID-19 vaccines." Dkt. 1 ¶ 29;

Dkt. 1-2 ¶ 20. The interview "included discussion of the suppression of information contrary to

the government narrative regarding vaccination and COVID in general." Dkt. 1 ¶ 30; Dkt. 1-2

¶ 21. Westover alleges that she did not reference DNR or DNR's COVID-19 policies in any of

the interviews nor did she discuss her own employment with DNR. Dkt. 1 ¶ 33; Dkt. 1-2 ¶ 22.

Westover further asserts that she "did not represent in any way that she was speaking on behalf

of DNR, representing its policies or views." Dkt. 1 ¶ 34. The next day, Westover posted on her X

---

[2] The Court may also consider a document not physically attached to the complaint if the parties do not contest its authenticity and the plaintiff necessarily relies on it. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Thus, while the Court takes the facts alleged in the amended complaint as true and construes them in the light most favorable to Westover, it also takes notice of the COVID-19 directive issued by Defendant Franz requiring all DNR employees be vaccinated. *See* Dkt. 189 at 4; *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014).

account that YouTube had removed the interview video from the platform. *Id.* ¶ 35; Dkt. 1-2 ¶ 23.

Sara Ford, the Communications Director for DNR's Office of the Commissioner of Public Lands, scheduled a meeting on September 30, 2021 with Westover, Defendant Ford, and Defendant Forsyth to discuss "DNR's expectations of Ms. Westover's independent journalism and her continued employment with DNR." Dkt. 1 ¶¶ 36–37; Dkt. 1-2 ¶ 24. During this meeting, Westover alleges that "Defendant Forsyth directed [her] to refrain from producing any more content that undermined DNR's policies related to COVID-19." Dkt. 1 ¶ 38; Dkt. 1-2 ¶ 25. Westover informed Forsyth and Ford that she needed time to consider the directive and would think about it over the weekend. Dkt. 1 ¶ 39; Dkt. 1-2 ¶ 26. Forsyth asked Westover to refrain from publishing additional COVID-19 related content while she considered the situation and she agreed. Dkt. 1 ¶ 40; Dkt. 1-2 ¶ 27.

On October 1, 2021, Westover received an email from Defendant Forsyth directing her to "refrain from creating new videos that undermine DNR's position and policies on COVID safety or—explicitly or implicitly—promotes/amplifies COVID misinformation." Dkt. 1 ¶ 41; Dkt. 1-2 ¶ 28. Westover responded to the email on October 4 denying that she shared any misinformation and wrote that "she believed her videos complied with DNR policy, and that . . . she had a First Amendment right to discuss matters of public concern, and she planned to continue to do so." Dkt. 1 ¶¶ 42–43; Dkt. 1-2 ¶ 30.

In a follow-up meeting on October 4, Westover informed Defendant Ford, "I believe I have a First Amendment right to discuss topics of public concern on my independent podcast and social media platforms, and that I have not shared any misinformation at any time. . . . For those reasons, I informed Sarah I planned to continue." Dkt. 1-2 at 20. Ford "stated that this was a directive that was brought to her, she is not the sole person making this decision, and if

[Westover did not] change the nature of [her] podcasts and social media posts, then [Westover] would no longer have a job with DNR." *Id.*

That day, Westover posted a video titled, "Firefighters sue Illinois Governor over Covid Vaccine mandate" to her YouTube channel. Dkt. 1 ¶ 45; Dkt. 1-2 ¶ 32. The next day, she posted another video titled, "Elites can break Facebook rules, leaked documents show" and a few days later Westover published a video titled, "Politics and authoritarianism are ruining science." Dkt. 1 ¶¶ 46–47; Dkt. 1-2 ¶¶ 33–34. Westover also posted a video of a second interview with Dr. Kheriaty titled, "Medical Ethics Director: At its core, science is about debate," on October 9, 2021. Dkt 1 ¶¶ 48; Dkt. 1-2 ¶ 35.

Westover received a written Notice of Separation from Defendant Ford on October 13, 2021, which stated that her last date with DNR would be October 18. Dkt. 1 ¶¶ 49–50; *see* Dkt. 1-2 at 17, 19. Westover emailed DNR staff on October 13 and again on October 18, requesting clarification on the reasons for her termination. Dkt. 1 ¶ 51; *see* Dkt. 1-2 at 19–22. In the October 18 email to Defendants Ford, Davis, Franz, and Darwin, Westover summarized the timeline of communications between herself and DNR staff regarding her social media posts and termination. Dkt. 1-2 at 20 ("As I have been told verbally that today is my last day with DNR, I wanted to make sure that the timeline I have in my notes is accurate as well as clarify some questions that I have remaining."). In that email, Westover wrote:

> On October 11, 2021 I had another call with Sarah. There was no HR representative in attendance. Sarah informed me that my termination was not a reflection of my work at DNR, and she negotiated an option for me to resign and receive a month of pay as well as medical benefits. If I resigned, she said DNR would not contest my application for unemployment benefits. . . .
>
> . . . According to my HR consultant, Lissa Kelsey, DNR does not contest unemployment benefits. However Sarah said that if I don't resign and instead I am fired, I may not be eligible for unemployment benefits. It was unclear whether that means DNR will contest my application for unemployment benefits and why. What

is the DNR policy on contesting my ability to receive unemployment benefits
should I be fired?

Dkt. 1-2 at 20–21.

Westover was involuntarily separated from DNR on October 18, and received an email
from Defendant Ford on October 20, stating that she had been separated for "inappropriate use of
social media." Dkt. 1 ¶ 53; Dkt. 1-2 ¶ 41. Westover asserts that this email did not reference any
alleged violation of a specific DNR policy. Dkt. 1 ¶ 54.

Westover filed suit on October 14, 2024 against the State of Washington, DNR, and DNR
officials Hilary Franz, Carlo Davis, Sarah Ford, and Darwin Forsyth. Dkt. 1. Westover brings
eight claims under Section 1983 for violations of the First Amendment, Fourteenth Amendment,
and unconstitutional conditions doctrine. *Id.* ¶¶ 67–117. Defendants moved for judgment on the
pleadings. Dkt. 18. Westover responded, Dkt. 20, and Defendants replied, Dkt. 21. The motion is
ripe for the Court's consideration.

### III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early
enough not to delay trial—a party may move for judgment on the pleadings." The legal standard
for Rule 12(c) is "substantially identical" to the standard for a motion to dismiss under
Rule 12(b)(6) because under both rules, "a court must determine whether the facts alleged in the
complaint, taken as true, entitle the plaintiff to a legal remedy."[1] *Chavez v. United States*, 683
F.3d 1102, 1108 (9th Cir. 2012) (cleaned up).

As with a motion to dismiss, to survive a motion for judgment on the pleadings, the
complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
555 (2007), but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief
that is plausible on its face.'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr.*, 768 F.3d at 945. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## IV.    DISCUSSION

### A.    Most of Westover's constitutional claims (counts 1–6, 8) are barred by the statute of limitations.

#### 1.    The statute of limitations defense was not waived.

As a preliminary matter, Westover argues that Defendants waived the statute of limitations defense by not raising it in their Answer, Dkt. 17, which was filed three weeks before Defendants moved for judgment on the pleadings. Dkt. 20 at 12. Westover asserts that under Federal Rule of Civil Procedure 8(c) and 12(b), Defendants must raise an affirmative defense in their first responsive pleading to avoid waiver. *Id.* Westover acknowledges, however, that "'the district court has discretion to allow a defendant to plead an affirmative defense in a subsequent motion,' but that discretion is limited to the absence of prejudice to the plaintiff." *Id.* at 13 (quoting *Asko Processing, Inc. v. Kibble & Prentice Holding Co.*, No. C17-1393 RSM, 2018 WL 834744, at *3 (W.D. Wash. Feb. 12, 2018)). Still, Westover argues that allowing Defendants to

raise the defense "prejudices her as a determination by the court that she failed to meet the statute of limitations finding is futile to her case." *Id.* In other words, allowing Defendants to raise their defense three weeks later "prejudic[es] her right to bring her case." *Id.*

Defendants contend that the Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings." Dkt. 21 at 6 (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)). They maintain that "[a] defendant may [] raise an affirmative defense for the first time in a motion for judgment on the pleadings, but only if the delay does not prejudice the plaintiff." *Id.* (quoting *Owens*, 244 F.3d at 713). Defendants argue that "Westover's sole assertion of prejudice is that if defendants prevail, she will lose her case." *Id.* at 7. And the Ninth Circuit has held that "[t]here is no prejudice to a plaintiff where an affirmative defense would have been dispositive if asserted when the action filed." *Id.* (cleaned up). Accordingly, since the delay was only three weeks, and Westover has not articulated any prejudice apart from the statute of limitations being dispositive to her case, Defendants argue the defense is timely. *Id.*

Defendants are correct. In *Owens*, the plaintiffs argued that the defendant there "waived its right to assert the doctrine of res judicata by failing to raise it as an affirmative defense in its answer or in its prior motions to dismiss." 244 F.3d at 713. But the Ninth Circuit held that the plaintiffs were not prejudiced by the defendants' late assertion of res judicata because they "may not demonstrate prejudice based solely on the untimely assertion of [an affirmative defense] because this affirmative defense would have been dispositive had [Defendant] asserted it when the action was filed." *Id.*; *see also Garcia*, 918 F.3d at 1008. Like the plaintiffs in *Owens*, Westover's only argument for prejudice is that the statute of limitations defense may dispose of the entire case. *See* Dkt. 20 at 12–13. This defense would have been just as "effective at the outset of [Westover's] suit." *Whyshak v. City Nat. Bank*, 607 F.2d 824, 826 (9th Cir. 1979).

1

2

Thus, since Westover does not provide any other reason to show that the three-week delay was

prejudicial, Defendants' statute of limitation defense was not waived.

3

4

       2.     *Most of Westover's constitutional claims (counts 1–6, 8) are barred by the statute of limitations.*

5

6

7

8

9

10

11

12

13

       Defendants contend that all claims (counts 1–6, 8), except for the Fourteenth Amendment

due process claim (count 7), should be dismissed because Westover filed her complaint on

October 14, 2024—past the three-year statute of limitations. Dkt. 18 at 16. Defendants argue that

"[c]ourts rely on state law to determine the length of the statute of limitations period applicable

to the § 1983 claim [and] . . . [i]n Washington, the length . . . is three years." *Id.* at 14 (first citing

*Hoesterey v. City of Cathedral City*, 945 F.2d 317, 318–29 (9th Cir. 1991); and then citing

*Joshua v. Newell*, 871 F.2d 884, 886 (9th Cir. 1989)). They assert that the point at which the

limitation period begins to accrue is notice: "a cause of action generally accrues when a plaintiff

knows or has reason to know of the injury which is the basis for his action." *Id.* (quoting *Cline v.

Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)).

14

15

16

17

18

19

20

21

22

23

24

       Defendants argue that for "a claim based on termination from employment, the statute of

limitations runs from 'when the operative decision to terminate was made' and the plaintiff was

notified of the decision, not 'when the decision is carried out.'" *Id.* (quoting *RK Ventures, Inc. v.

City of Seattle*, 307 F.3d 1045, 1059 (9th Cir. 2002)). Thus, Defendants maintain that the statute

of limitations began to run when Westover learned of DNR's decision to terminate her

employment. *Id.* at 25. They point to Westover's declaration filed along with her complaint, *see*

Dkt. 1-2 at 20–21, to establish that, based on the pleadings, Westover knew on October 11, 2021

that she was fired. Dkt. 18 at 15. Specifically, Westover was informed on October 11 that her

"termination was not a reflection of [her] work at DNR, and [Defendant Ford] negotiated an

option for [Westover] to resign and receive a month of pay as well as medical benefits." Dkt. 21

at 8 (quoting Dkt. 1-2 at 20). Defendants argue, "[t]hat a notice of termination was sent on October 13, 2021 or that Westover's employment termination was not effective until seven days later on October 18, 2021, does not change the fact that the operative decision was communicated on October 11, 2021." Dkt. 18 at 15. Since the three-year statute of limitations period ended on October 11, 2024—three days before Westover filed her complaint on October 14, 2024—Defendants maintain that the claims are barred. *Id.* at 16.

Westover does not dispute that the statute of limitations for a Section 1983 claim is three years. *See* Dkt. 20 at 14. She argues, however, that the earliest the statute of limitations began to accrue is October 13, 2021, when the written notice of her termination was sent. *See* Dkt. 1 ¶ 36. Because October 13, 2024 fell on a Sunday, Westover contends that her filing on Monday, October 14, 2024 was timely. Dkt. 20 at 15 (citing Fed. R. Civ. P. 6(a)). But Westover argues that the statute of limitations in fact did not begin to run until October 18, 2021, because that was the date that she knew or had reason to know of the injury that is the basis of her lawsuit—her termination from DNR. *Id.* Westover maintains that notice must be "unequivocal, and communicated in a manner such that *no reasonable person* could think there might be a retreat or change in position prior to the termination of the employment decision." *Id.* (quoting *Hoesterey*, 945 F.2d at 320) (emphasis added).

Westover further argues that "Defendants took no action that could commence the statute of limitations on October 11, 2021." *Id.* at 16. Westover cites *Hoesterey v. Cathedral City*, arguing that "to trigger the statute of limitations, Ms. Westover needs to receive notice, not only of the termination decision, but also that the decision was final and that it would be followed by no further process." *Id.* (quoting *Hoesterey*, 945 F.2d at 320). Specifically, Westover maintains, a "simple oral notification of the decision to terminate [her] at a later time would not alert [her] to the specific practices[.]" *Id.* (quoting *Hoesterey*, 945 F.2d at 320).

Here, Westover argues that Defendant Ford's communication "is insufficient to stand as a notification that a final decision had been made" and "instead, was presented as an opportunity for ongoing conversation, negotiation, and procedure." *Id.* For example, Westover asserts that no rational person would understand Defendant Ford's statement that she had "negotiated" an option for Westover to voluntarily resign to mean that "the decision was final, unequivocal, and left open no opportunity for retreat or change in position prior to termination." *Id.* at 17. The option to resign, Westover argues, makes it unclear as to whether she was "unequivocally" informed of her termination. *Id.*

Westover also argues that on October 13, 2021, she emailed Defendant Ford and Lissa Kelsey about the Notice of Separation she received that day and asked: "The first line says 'This is an official notice of termination.' I read through it and it's unclear to me why I'm being terminated. Could you please make it more clear in the document the reason for my termination?" *Id.* at 18; *see* Dkt. 1-2 at 19. Westover asserts that she continued to lack clarity on whether she was being terminated for her social media posts or for seeking a resolution regarding her vaccine accommodation. Dkt. 20 at 21. It was not until October 20, 2021 when she was informed that she was separated for her "inappropriate use of social media." *Id.*; *see* Dkt. 1-2 at 24. Absent unequivocal notice, Westover contends that the final date of employment—October 18, 2021—is when the statute of limitations began to run because it is the "only conclusive or terminal act taken by Defendants to terminate Ms. Westover[.]" Dkt. 20 at 21.

These arguments are unpersuasive. To start, the parties are correct that in Washington Section 1983 claims must be filed within three years. *See RK Ventures*, 307 F.3d at 1058 ("the statute of limitations applicable to . . . § 1983 . . . claims is three years."); *see also* RCW 4.16.080(2). And the Ninth Circuit has explained, "[t]o determine the timeliness of" a plaintiff's claims, "we must determine whether [the plaintiff has] alleged 'discrete acts' that would violate

the Constitution that occurred within the limitations period." *RK Ventures*, 307 F.3d at 1058 (citations omitted). To do so, courts "look at when the 'operative decision' occurred[.]" *Id.* (quoting *Chardon v. Fernandez*, 454 U.S. 6, 8 (1980)). Citing the Supreme Court's decisions in *Chardon* and *Ricks*, the Ninth Circuit clarified that "the question is when the operative decision is made, not when the decision is carried out." *Id.* at 1059 (first citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 262 (1980); and then citing *Chardon*, 454 U.S. at 8).

*Ricks* and *Chardon* are instructive in determining the action that constitutes the "operative decision." In *Ricks*, the Supreme Court held that the "operative decision" was the "unlawful employment practice" that the plaintiff seeks relief from. 449 U.S. at 257. There, the challenged employment practice was the decision to deny tenure. *Id.* Thus, the Supreme Court held that the statute of limitations began when the tenure decision was made, and the plaintiff was notified of it. *Id.* at 259. In doing so, the Supreme Court rejected the plaintiff's argument that the statute of limitations should commence when he was formally terminated. *Id.* at 258 ("In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so even though one of the effects of the denial of tenure–the eventual loss of a teaching position–did not occur until later.").

In *Chardon*, the Court extended its holding from *Ricks*, applying *Ricks* to contexts where the operative decision was the termination of employment. 454 U.S. at 6. There, the plaintiffs were nontenured administrators who alleged that they were unlawfully terminated for exercising their First Amendment rights. *Id.* The Supreme Court explained that in "*Ricks*, we held that the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act becomes painful." *Id.* at 8 (emphasis in original). Since the "decision to terminate" is the basis of the plaintiffs' claims, the Supreme Court concluded that the statute of limitations began

to run when they received their termination letter, not their last day of employment. *Id.* ("[I]n each case, the operative decision was made—and notice given—in advance of a designated date on which employment terminated."). The Supreme Court reasoned that "[t]he fact that [the plaintiffs] were afforded reasonable notice cannot extend the period within which suit must be filed" and "[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id.* (quoting *Ricks*, 449 U.S. at 257).

Applying these principles, the Ninth Circuit in *RK Ventures* held, "[the] statute of limitations under § 1983 . . . begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action" and "not the moment at which the operative decision becomes irrevocable." 307 F.3d at 1058, 1060.

Here, like in *Chardon*, the operative decision is Defendants' decision to terminate Westover. *See* Dkt. 1 ¶ 55 ("DNR's termination of Ms. Westover's employment violated Ms. Westover's First Amendment rights of free speech and freedom of press."); *Chardon*, 454 U.S. at 8 ("Here, [the plaintiffs] allege that the decision to terminate was made solely for political reasons, violative of First Amendment rights."). Whether Westover's complaint was filed in time turns on when Westover was notified of DNR's decision to terminate her employment. *See RK Ventures*, 307 F.3d at 1058.

An exhibit attached to Westover's complaint—and therefore incorporated into the pleadings—contains an email from Westover to individual Defendants dated October 18, 2021, summarizing events leading to her separation. *See* Dkt. 1-2 at 20–22. In that email, Westover wrote: "As I have been told verbally that today is my last day with DNR, I wanted to make sure that the timeline I have in my notes is accurate as well as clarify some questions that I have remaining." *Id.* at 20. Westover further wrote:

On that [September 28, 2021] call, Sarah reminded me of the vaccine mandate's upcoming deadline. I responded that I was thoughtfully considering my options and that I would make a decision before the October 18 deadline. Darwin then said, "On a related note," my recent social media posts discussing Covid news such as vaccine mandates are unacceptable because they "undermine" DNR's vaccine mandate. Sarah affirmed that she was aware I was encouraged to continue my independent journalism when I was hired, but instructed me to stop all social media posts related to any Covid topic that is not aligned with DNR's official policy, despite my work being done on personal time and my platforms having no affiliation to my job at DNR. . . .

On October 11, 2021 I had another call with Sarah. There was no HR representative in attendance. Sarah informed me that my termination was not a reflection of my work at DNR, and she negotiated an option for me to resign and receive a month of pay as well as medical benefits. If I resigned, she said DNR would not contest my application for unemployment benefits. Sarah also stated that "given the COVID policy which continues to change," which she said had delayed our follow up meeting, the 18th "would have been your last day regardless" asserting I "would not have been granted an accommodation" because of the nature of communications work. . . .

According to my HR consultant, Lissa Kelsey, DNR does not contest unemployment benefits. However Sarah said that if I don't resign and instead I am fired, I may not be eligible for unemployment benefits. It was unclear whether that means DNR will contest my application for unemployment benefits and why. What is the DNR policy on contesting my ability to receive unemployment benefits should I be fired?

*Id.* at 20–21.

Westover's email shows that she was notified of DNR's decision to terminate her on October 11, 2021. *Id.* Specifically, Westover noted, "On October 11, 2021 I had another call with Sarah. . . . Sarah informed me that *my termination* was not a reflection of my work at DNR, and she negotiated an option for me to resign and receive a month of pay as well as medical benefits." Dkt. 1-2 at 20 (emphasis added). Westover reiterated, "Sarah said that if I don't resign and instead I am fired, I may not be eligible for unemployment benefits." *Id.* at 21. Nonetheless, Westover contests that these statements demonstrate notice of termination but instead "evidences the fact that there was no unequivocal statement that she was to be terminated[.]" Dkt. 20 at 18. The Court disagrees. The plain words of her email show that Westover was aware of her

"termination" and that she was seeking clarification about her unemployment benefits resulting from her separation. *See* Dkt. 1-2 at 20.

Westover argues that in *Hoesterey*, the Ninth Circuit held that "to trigger the statute of limitations, [the plaintiff] needed to have received notice, not only of the termination decision, but also that the decision was final and that it would be followed by no further process." 945 F.2d at 320; Dkt. 20 at 16. Since Defendant Ford's statements do not indicate the "decision was final and that it would be followed by no further process," Westover argues that the October 11 call with Defendant Ford cannot trigger the statute of limitations. Dkt. 20 at 16. But Defendants are correct to point out that *Hoesterey* does not control here, where the alleged wrongful act is termination itself. *See* Dkt. 21 at 8. The plaintiff in *Hoesterey* "contest[ed] the lack of process accompanying his termination," which is not the basis of Westover's federal constitutional claims that Defendants seek to dismiss for late filing. 945 F.2d at 320 ("Because Hoesterey contests the lack of process accompanying his termination, in contrast to *Ricks* and *Chardon*, simple oral notification of the decision to terminate him at a later time would not alert him to the specific practices challenged here: the fact that no more process would be forthcoming prior to termination."). The *Hoesterey* court was careful to explain that "[t]he different practices challenged in these cases necessarily affect the point in time at which the statute of limitations begins to accrue." *Id.*

Instead, *RK Ventures* governs and explains that the statute of limitations "begins to run when the cause of action accrues, which is when the plaintiffs know or have reason to know of the injury that is the basis of their action." 307 F.3d at 1058 (quoting *Cabrera v. City of Huntington Park*, 159 F.3d 374, 379 (9th Cir. 1998)). For the claims in which the challenged practice is Westover's termination, that date is when Westover knew or had reason to know that DNR had decided to terminate her employment. Westover's own statements show that she was

1

aware of her termination on October 11. That DNR provided Westover an option to resign rather

2

than be fired, *see* Dkt. 20 at 19, does not change the fact that Westover was informed of the

3

termination decision that day. *See* Dkt. 1-2 at 20.

4

Furthermore, the fact that Westover lacked clarity as to why she was terminated until

5

October 20, 2021—whether for her social postings or refusal to receive the COVID-19

6

vaccine—has no bearing here. *See* Dkt. 20 at 21. The Ninth Circuit has held, "in the context of

7

civil rights claims under" Section 1983, that "a plaintiff's claim accrues when the plaintiff learns

8

of the 'actual injury,' i.e., an adverse employment action, and not when the plaintiff suspects a

9

'legal wrong,' i.e., that the employer acted with a discriminatory intent." *Coppinger-Martin v.*

10

*Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (citation omitted). Westover's claims accrued when she

11

"learned of the actual injury"—that DNR decided to terminate her employment, not when she

12

learned that DNR "acted with a discriminatory intent." *Id.*; *see* Dkt. 1-2 at 20–21.

13

Since the last day Westover could have filed the claims contained in Counts 1–6 and 8 of

14

her complaint was October 11, 2024, and she failed to do so, these claims are DISMISSED with

15

prejudice.

16

**B.    Westover's due process claim (count 7) fails as a matter of law.**

17

Defendants next argue that Westover's procedural due process claim[3] fails as a matter of

18

law because Westover was an at-will employee who was not entitled to due process protections.

19

Dkt. 21 at 11. Even though Westover asserted in the complaint that she was mischaracterized as

20

an at-will employee, *see* Dkt. 1 ¶¶ 56–64, Defendants argue that Westover concedes in her

21

22

23

24

[3] In Defendants' reply, they contend that Westover failed to respond to their arguments regarding her substantive due process claims and that the claim is now abandoned. Dkt. 21 at 11. The Court agrees and addresses only her procedural due process claim. *See Gray v. Washington State Dep't of Transp.*, No. 3:23-CV-05418-DGE, 2023 WL 6622232, at *6 (W.D. Wash. Oct. 11, 2023), *aff'd sub nom. Gray v. Washington Dep't of Transp.*, No. 23-3278, 2024 WL 5001484 (9th Cir. Dec. 6, 2024).

opposition brief that she was an at-will employee. *Id.*; *see* Dkt. 20 at 23–24 (contending that "[e]ven if Ms. Westover's at-will status does not afford her to a *Loudermill* hearing or other pre/post-termination hearing" that "she should have been offered a 'name-clearing hearing[.]'"). If Westover wanted to challenge her at-will status, Defendants argue that she was required to seek reclassification under RCW 41.06.170(3), which she has not done. Dkt. 18 at 18–19.

Defendants further contend that a public employee "only has a constitutionally protected property interest in continued employment . . . if [she] has a reasonable expectation or a 'legitimate claim of entitlement' to it, rather than a mere 'unilateral expectation.'" Dkt. 21 at 11 (quoting *Brady v. Gebbie*, 859 F.2d 1543, 1547–48 (9th Cir. 1988)). "Where . . . a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right." *Id.* (quoting *Dyack v. Commonwealth of N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003)). Thus, since Westover was an at-will employee, Defendants argue that she "did not have a property interest in her job and had no right to pre or post-deprivation process." *Id.* at 10.

Westover argues that as a state employee, she was entitled to a pre-disciplinary or *Loudermill* hearing. Dkt. 20 at 22. And Westover maintains that even if her "at-will status [did] not afford her a *Loudermill* hearing or other pre/post termination hearing, she should have been offered a 'name-clearing hearing[.]'" *Id.* at 23–24. Westover cites *Cox v Roskelley*, 359 F.3d 1105 (9th Cir. 2004), where the Ninth Circuit held that the failure to provide a name-clearing hearing violated the plaintiff's due process rights. *Id.* at 24. In *Cox*, the Ninth Circuit explained that a "terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." 359 F.3d at 1110.

There, the court reasoned that the plaintiff's termination contained stigmatizing information that "charged improper conduct and could impair [the plaintiff's] reputation for honesty or morality." *Id.* at 1113. For example, the letter referenced the plaintiff's misconduct such as directing county business to a friend who was paid for work that was never performed and making a "threatening" call to the supervisor of the individual who alerted county officials of the overcharge. *Id.* at 1108. Westover argues that as a former state employee, her personnel records are subject to potential public disclosure. Dkt. 20 at 24. She asserts that "vague statement[s]" such as Defendant Ford's email that she was "terminated due to inappropriate use of social media" is stigmatizing because it "leads the reader to many conclusions, least of which would be the notion that Ms. Westover posted information with professionals who disagreed with DNR Commissioner Franz's covid-19 narrative." *Id.* at 24–25.

Defendants contend that *Cox* is inapposite because the statement, "terminated due to inappropriate use of social media," is "a far cry from the accusations of dishonesty that give rise to the right to a name-clearing hearing." Dkt. 21 at 13. They argue that a charge of "inappropriate use of social media . . . does not approach the level of stigma in *Cox*." *Id.* Additionally, even if Westover was entitled to a name-clearing hearing, Defendants assert that Westover failed to allege that she requested one. *Id.*

Binding Ninth Circuit precedent provides that if "a state employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right." *Dyack*, 317 F.3d at 1033. As Westover concedes, she was an at-will employee, and thus not entitled to a *Loudermill* hearing. *See* Dkt. 20 at 23–24.

Even so, "a terminated employee has a constitutionally based liberty interest in clearing his name when stigmatizing information regarding the reasons for the termination is publicly disclosed." *Cox*, 359 F.3d at 1110 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). An

employee's liberty interest is "implicated if a charge impairs his reputation for honesty or morality." *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 777 (9th Cir. 1982). Although "[w]hether a defendant's statements rise to the level of stigmatizing a plaintiff is a question of fact," charges that do "not reference the type of stigmatizing statements" courts have held to be actionable are insufficient as a matter of law. *Kramer v. Cullinan*, 878 F.3d 1156, 1162–63 (9th Cir. 2018) (citation omitted). To assert a due process claim on this theory, the plaintiff must "must demonstrate that: (1) the accuracy of the charge is contested, (2) there [was] some public disclosure of the charge, and (3) the charge [was] made in connection with the termination of employment[.]" *Id.* (cleaned up).

The Court agrees that the only statement asserted by Westover—that she was "terminated for inappropriate use of social media"— does "not reference the type of stigmatizing statements [that courts] have held to be actionable, *i.e.*, those accusing terminated employees of dishonesty, immorality and the like." *Id.* at 1163; *see, e.g., Guzman v. Shewry*, 552 F.3d 941, 946 (9th Cir. 2009) (accusing an employee of fraud was stigmatizing); *Campanelli v. Bockrath*, 100 F.3d 1476, 1480 (9th Cir. 1996) (charging an employee with "immoral conduct" by "abusing the young men entrusted to his care" was stigmatizing). Even taking the pleadings in the light most favorable to Westover and drawing all inferences in her favor, this statement does not implicate Westover's reputation for honesty or morality.

Rather, the personnel records clarify that Westover was terminated because her social media posts discussing COVID-19 news such as employer vaccine mandates "undermin[ed]" DNR's own vaccine mandate. Dkt. 1-2 at 20. The records also show that Defendant Ford told Westover she did "really good work and that [Defendant Ford] would be disheartened to lose [her]." *Id.* But if Westover did not "change the nature of [her] podcasts and social media posts," she was informed that she "would no longer have a job with DNR." *Id.* It was within this context

that Westover was "terminated for 'inappropriate use of social media,'" Dkt. 1-2 ¶ 41, and it does not rise to the level of stigma that "impairs a reputation for honesty or morality." *Kramer*, 878 F.3d at 1163 (citation omitted).

Finally, while the Ninth Circuit lacks a published decision on point, "several circuits have ruled that a plaintiff who fails to request a name clearing hearing is precluded from asserting a substantive due process claim on an injury to reputation theory." *Reiber v. City of Pullman*, 918 F. Supp. 2d 1091, 1102 (E.D. Wash. 2013) (citing cases). Here, Westover has not alleged that she requested a name-clearing hearing. *See generally* Dkt. 1. Nor has Westover alleged that there was public disclosure of the reasons for her termination. *See Kramer*, 878 F.3d at 1162–63. Absent factual allegations that Westover sought a name-clearing hearing, Westover's due process claim fails as a matter of law on this basis. *See Holscher v. Olson*, No. CV-07-3023-EFS, 2008 WL 2645484, at *13 (E.D. Wash. June 30, 2008) (holding that "Plaintiff's failure to request a name-clearing hearing bars her liberty interest claim.").

Westover has not requested leave to amend her complaint. It is conceivable, however, that the defects in Westover's due process claim could be remedied by additional factual allegations. *See United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) ("[D]ismissal without leave to amend is improper unless it is clear . . . that the complaint could not be saved by any amendment.") (cleaned up). Accordingly, the due process claim is DISMISSED without prejudice. If Westover seeks leave to amend her due process claim, she must file a motion for leave to amend within 14 days of this order being issued, and she must attach a proposed amended complaint to her motion. If Westover does not seek leave to amend within 14 days, the Court will enter judgment in favor of defendants and close the case.

1

2

**C.      Westover's claims against the State of Washington and DNR are barred by sovereign immunity.**

To the extent that Westover seeks relief against the State of Washington and DNR, those claims are barred by the Eleventh Amendment. *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). "Longstanding Supreme Court precedent has interpreted this Amendment to immunize states from suit in federal court by citizens and noncitizens alike." *Kohn v. State Bar of California*, 87 F.4th 1021, 1025 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 1465 (2024) (citing cases). Eleventh Amendment immunity extends to state agencies, which cannot be sued for damages or injunctive relief in federal court. *See Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003) (citation omitted).

A state agency is not a person for purposes of Section 1983 and cannot be sued for constitutional violations unless it affirmatively waives its sovereign immunity. *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022). As Westover acknowledges, the state of Washington has not waived sovereign immunity for claims under Section 1983. *See* Dkt. 20 at 25; *Rains v. State*, 100 Wn. 2d 660, 667, 674 P.2d 165 (1983) ("[T]here is no express legislative indication that the State here has consented to suit in state court for federal civil rights actions."). Accordingly, since the State of Washington and DNR are not proper defendants for Section 1983 suits, Westover's constitutional claims against them fail as a matter of law. The claims against the State and DNR are DISMISSED with prejudice.

## V.      CONCLUSION

For the reasons explained above:

- Defendants' motion for judgment on the pleadings (Dkt. 18) is GRANTED;

- Westover's procedural due process claim is DISMISSED WITHOUT PREJUDICE. If Westover seeks leave to amend her procedural due process claim,

she must file a motion for leave to amend within 14 days of issuance of this Order, and she must attach a proposed amended complaint to her motion. If Westover does not move for leave to amend, the Court will enter judgment in favor of defendants and close the case.

- All other claims against the individual defendants, and all claims against the State of Washington and DNR, are DISMISSED WITH PREJUDICE. Leave to amend is denied for these claims because the defects cannot be cured through additional facts and amendment would be futile.

Dated this 13th day of May, 2025.

Tiffany M. Cartwright
United States District Judge